IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| R. BRUCE HERSCHEND and <br> DIANNA HERSCHEND, <br><br> Plaintiffs, <br><br> vs. <br><br> WILLIAM J. HILL, III and <br> DEBRA A. HILL, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 07-3426-CV-S-ODS <br> ) <br> ) <br> ) <br> ) <br> ) |

<u>ORDER AND OPINION DENYING PLAINTIFF'S REQUEST FOR DECLARATORY
RELIEF AND DIRECTING ENTRY OF JUDGMENT ON THE JURY'S VERDICTS</u>

A trial in this case was held in August 2009, with the jury returning its verdicts on August 24, 2009. Two issues arose after the jury was discharged: Plaintiffs' entitlement to declaratory relief on Count I, and ascertaining the correct amount of the judgment. Entry of judgment has been delayed so the Court could address these issues, and the parties have filed briefs addressing the availability of declaratory relief. The Court has reviewed the parties' filings and has reviewed the Record, and now (1) denies Plaintiffs' request for declaratory relief and (2) directs that a judgment be entered against Defendants in the amount of $1,368,380.

<u>I. Declaratory Relief</u>

The parties were members in a limited liability company called RBD Marketing, LLC ("RBD"). Section 23 of RBD's Operating Agreement addressed termination and stated in part as follows:

> The member proposing the termination shall offer a price at which it shall
> be willing to purchase the assets of the Company and the other member
> shall have the option to either sell its interest or purchase the other
> member's interest at the stated price.

According to the Amended Complaint, in December 2006 Plaintiffs sent Defendants a letter "in accordance with Section 23 of the Operating Agreement, propos[ing] to terminate RBD . . . . The letter set forth the terms and conditions of the [Plaintiffs'] offer." Amended Complaint, ¶ 10. Defendants allegedly agreed to sell their interest in RBD on the terms stated in Plaintiffs' letter, but Defendants have refused to execute the documents called for as part of the sale's terms. Amended Complaint, ¶¶ 11, 23. This has led to a controversy between the parties over the ownership of RBD. Amended Complaint, ¶ 24. Plaintiffs requested that the Court "interpret the Operating Agreement and the parties' corresponding documents and find that the [Defendants] are required to sell all of their membership interest in RBD . . . pursuant to the terms and conditions of the [Plaintiffs'] letter of December 11, 2006." Amended Complaint, ¶ 27. In Count I's concluding paragraph, Plaintiffs asked for a ruling that, *inter alia*, "the [Plaintiffs'] offer of December 11, 2006 was proper and in accordance with the Operating Agreement of RBD." Count VIII also sought damages associated with Defendants' alleged breach of the Operating Agreement, and specifically alleged Defendants breached the agreement by "[f]ailing to sell their interest . . . or purchase the interest . . . in accordance with Section 23 of the Operating Agreement." Amended Complaint, ¶ 106(E). Part of the purported damages from this breach corresponded to the terms of Plaintiff's December 2006 letter. Amended Complaint, ¶ 108 (alleging damages included "executing personal guarantees on a loan of $3,050,000.00 given to RBD, putting their personal assets up as collateral for the loan [and] payments made to the loan on behalf of RBD").

The evidence and arguments presented at trial continued to recognize the interrelationship between section 23 of the Operating Agreement and the parties' exchange of letters in December 2006. Plaintiffs' theory was that their letter "activated" the provisions of section 23. No real distinction or separation between the letters and the Operating Agreement was suggested; they were a connected series of events leading to Plaintiffs' claim that Defendants breached the Operating Agreement by refusing to honor its provisions once Section 23's provisions were invoked.

Instruction 24 was the Verdict Director for Plaintiffs' claim that the Defendants breached the RBD Operating Agreement. The Verdict Director set forth four elements, the first of which required the jury to decide

> the Herschends and Hills entered into the RBD Marketing, LLC Operating Agreement whereby:
>
> (a) the Hills agreed to sell their ownership interest in RBD Marketing, LLC to the Herschends in compliance with Section 23 of the Operating Agreement and the Herschends agreed to receive it, <u>or</u>
>
> (b) the Herschends and Hills agreed to pay their respective shares of the tax preparation costs according to their respective Distribution Percentage Interest in accordance with Section 18 of the Operating Agreement, . . . .

Verdict Form C corresponded to this Verdict Director. After identifying the party for which they found, the jury was directed (assuming they found for Plaintiffs) to "unanimously agree the defendants breached the RBD Marketing, LLC Operating Agreement in the following manner or manners as described in Instruction No. 24." The jury checked the space indicating their finding that Defendants "failed to pay their respective share of the tax preparation costs in accordance with Section 18 of the Operating Agreement," but declined to check the space indicating that they found Defendants "failed to perform their agreement to sell their ownership interest in RBD Marketing, LLC to the [Plaintiffs] in compliance with Section 23 of the Operating Agreement."

Plaintiffs now seek a decree from the Court declaring that they own RBD. Recognizing the difficulty presented by the jury's findings on Verdict Form C, Plaintiffs contend that form "is <u>not</u> related to Count I." Doc. # 186, p. 11(emphasis in original). Plaintiffs explain that Count I involved the contract formed by the exchange of letters in December 2006, while Verdict Form C "merely asked the jury to decide whether the Hills' failure to sell their ownership interest constituted a breach of the Operating Agreement . . . . [T]hat matter has nothing to do with Count I." Doc. # 186, p. 12. The Court disagrees. As plead in the Amended Complaint (including Count I) and as

3

presented and argued to the jury, the letters and the Operating Agreement were a combined, intertwined package. There was one contract theorized, not two.

The Court also observes that even if Plaintiffs theorized two distinct contract claims, Plaintiff should have submitted both to the jury. While it is true that declaratory relief is imposed by the Court and not the jury, underlying factual disputes for legal claims must still be resolved by the jury before relief is imposed. It has long been understood that the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, "specifically preserves the right to jury trial for both parties." Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 504 (1959). When both legal and equitable relief is sought, or when the underlying cause of action is legal and not equitable, the trial court is required to present the legal claims to the jury before issuing equitable relief, and any equitable relief ordered must not conflict with the jury's findings. Dairy Queen Inc. v. Wood, 369 U.S. 469, 472-73 (1962); Indiana Lumbermens Mut. Ins. Co. v. Timbgerland Pallet & Lumber Co., 194 F.3d 368, 374-76 (8th Cir. 1999). Thus, even if Plaintiffs believed there were two distinct contracts, its request for declaratory relief as a remedy for one of those breaches – a legal cause of action – should have been submitted to the jury to determine whether a breach occurred. If the jury agreed, declaratory relief could be issued.[1]

If, as the Court holds, only one contractual theory was set forth in the Amended Complaint and presented to the jury, the Court cannot grant declaratory relief because the jury found the contract was not breached. If Plaintiffs' "two contract" theory is viable, they were required to obtain the jury's determination that the "second contract" was breached before the Court could grant relief. Either way, declaratory relief cannot be granted.

---

[1]It is here that Plaintiffs apparently misunderstood the Court's announcement that it would "decide" Count I. In making this statement, the Court was indicating it would decide whether to issue declaratory relief as part of the judgment once the jury issued its verdict. The Court was not indicating it could or would independently decide the facts. The Court cannot issue declaratory relief on a claim the Plaintiffs submitted and lost, and if the claim was not submitted the Court cannot issue declaratory relief because it should have been.

4

## II. Amount of Judgment

The other outstanding issue involves ascertaining the amount of the judgment. Set forth below is a table identifying the claims upon which Plaintiffs prevailed[2] and the corresponding the verdict directors, verdict forms, monetary awards.

| Claim | Director | Form | Award |
|---|---|---|---|
| Fraudulent Misrepresentation | 15 | A | $268,716 actual<br>$380,328 punitives |
| Breach of the RBD Operating Agreement | 24 | C | $631,620 actual |
| Breach of the Butterfly Creations Operating Agreement | 27 | D | $631,620 actual |
| Unjust Enrichment | 30 | E | $87,716 actual |

All of Plaintiffs' claims were governed by Missouri law, and "[i]t is well settled in Missouri that a party cannot be compensated for the same injury twice." Kforce, Inc. v. Surrex Solutions Corp., 436 F.3d 981, 984 (8th Cir. 2006). A plaintiff may assert multiple theories of recovery for a single wrong or injury, but "a plaintiff may not be made more than whole or receive more than one full recovery for the same harm." Id. (quoting Norber v. Marcotte, 134 S.W.3d 651, 667 (Mo. Ct. App. 2004)).

The Court's focus is on the two breach of contract claims. It is no coincidence that the jury awarded the identical amount for the two distinct breach of contract claims. The two agreements were related and Plaintiffs' damages were not compartmentalized. In other words, Plaintiff established its damages for Defendants' breaches, but there was no effort to distinguish between "damages caused by the breach of the RBD Agreement" from "damages caused by the breach of the Butterfly Creations

---

[2] The claim not listed was a claim for negligent misrepresentation. This claim was based on the same facts as the fraud claim, and the jury was told not to consider the negligent misrepresentation claim if it found in favor of Plaintiffs on the fraud claim.

5

Agreement."  This is not meant as a criticism: given the interrelatedness between the two agreements it may have been impossible to properly apportion Plaintiffs' damages between the two alleged breaches.  Nonetheless, the jury was presented with a single injury attributed to Defendants' breaches, and Plaintiffs are entitled to only one recovery.

The Court does not believe the fraud and unjust enrichment claims are duplicative.  The fraud claim related to damages suffered from entering the agreements, not from the breaches of those agreements.  The injuries from the fraudulent inducement and the subsequent breach are distinct.  The unjust enrichment claim was also premised on events (and damages) unrelated to the other claims in the case.

### III.  Conclusion

For these reasons, Plaintiffs' request for declaratory relief is denied.  Judgment shall be entered in favor of Plaintiffs in the amount of $1,368,380.

IT IS SO ORDERED.

DATE: October 1, 2009

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT